Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: 800.400.6808
Facsimile: 800.520.5523

Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MAPSTEAD, SEVIM BADAK, ROBERT MCGINN, DAVID CHROMY, AND RONALD POTTINGER, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED,<br><br>           Plaintiff,<br><br>   v.<br><br>LOREX CORPORATION,<br><br>           Defendants. | Case No.:  5:20-cv-00936<br><br>**CLASS ACTION COMPLAINT**<br><br>**For damages and injunctive relief for:**<br>1. **Breach of Express Warranty;**<br>2. **Breach of Implied Warranty;**<br>3. **Breach of Express Warranty – Magnuson Moss Warranty Act;**<br>4. **Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790, *et seq.*;**<br>5. **Cal. Civ. Code § 1750, *et seq.*;**<br>6. **Cal. Bus. & Prof. § 17200, *et seq.*;**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiffs Richard Mapstead, Sevim Badak, Robert McGinn, David Chromy, and Ronald Pottinger (collectively, "Plaintiffs"), individually and on behalf of the proposed Classes defined below, bring this class action lawsuit for damages resulting from the unlawful actions of Defendant Lorex Corporation ("Lorex" or "Defendants").

In August 2019, when Lorex pushed out a pre-planned firmware update and forced its consumers to switch mobile software applications ("App"), tens of thousands of Lorex consumers, including Plaintiffs and members of the class, lost the ability to view remotely the video feed from their security systems.  Some Lorex customers lost the use of their security systems for months and some still cannot remotely monitor their security cameras.

Plaintiffs allege as follows upon personal knowledge as to themselves and their own experiences and, as to all other matters, upon information and belief including due investigation conducted by their attorneys.

## INTRODUCTION

1.      Lorex, founded in 1991, is a video surveillance company that manufactures and distributes security and monitoring systems and cameras under the Lorex brand name. Lorex sells its security cameras, recorders, and systems in the consumer and small business markets, primarily in North America.

2.      Lorex fails to provide any technical support in the states where it markets and sells its security cameras, and as a result, when any technical failures of the system appears, Lorex refuses to fix the issue by inspecting the cameras or equipment. Instead, Lorex provides only limited technical support over the telephone for consumers.

3.      Plaintiffs purchased and used their Lorex security cameras to safeguard the most important things in their lives: their homes, their property, and their families.  Lorex markets to consumers' safety concerns and their desire to protect what they cherish most. Defendants ask their customers to "[t]rust in Lorex to provide you with the perfect home

security … Lorex can help you secure what matters most and give you the peace of mind you deserve."[1]

4.      Lorex security systems are sold with the promise that consumers can monitor their security systems remotely.[2]  Lorex represents that it's system allows consumers to view the video feeds of their cameras with smart devices (cellular telephones and tablets) through downloadable applications, such as the Lorex Cloud Mobile App[3] and the Lorex Secure Mobile App, as well with their computers.[4]  Lorex advertised that its security camera systems also "feature remote access via the Internet, giving you peace of mind no matter where you are."[5]

5.      In July 2019, Lorex began notifying consumers across the country that they would be rolling out an update to all Lorex systems.  Lorex announced that "as part of the [firmware update] process it will be necessary for some customers to transition to a new Lorex App."[6]  Lorex assured its customers that it had "thoroughly tested the update process" and anticipated that "there may be a few unexpected interruptions to customer devices."[7]

6.      But when Lorex consumers performed the firmware update and switched mobile Apps, they discovered that they could no longer connect to their security cameras' video feed from their cell phones or other mobile devices.  Lorex consumers no longer had remote access to their security cameras.  Their security systems were rendered completely useless.

7.      For instance, because they could no longer remotely access their security system video feed, when Plaintiffs were away from their home they could no longer

---

[1]      https://www.youtube.com/channel/UCBRQneNUSdU_bnRXuARdMFA (last visited November 26, 2019).
[2]      *See* https://www.lorextechnology.com/SmartHome (last visited November 12, 2019)
[3]      https://www.lorextechnology.com/articles/Lorex-Cloud-Mobile-App (last visited November 12, 2019)

[4]      https://www.lorextechnology.com/articles/Lorex-Secure-Mobile-App (last visited November 12, 2019)

[5]      https://www.lorextechnology.com/security-camera-systems/N-1wtg35h (last visited November 22, 2019)
[6]      https://www.lorextechnology.com/up (last visited December 10, 2019).
[77]     https://www.lorextechnology.com/up (last visited December 10, 2019).

monitor their property, watch over their families, observe their pets, or receive motion detection alerts.

8.      On August 15, 2019, Lorex stopped altogether its support of the Lorex Apps that had effectively provided remote access to consumers' security systems.  Lorex also stopped supporting the previous version of its firmware.  Many of Lorex's consumers had already lost access to their security camera video feeds when they performed the firmware update and switched mobile Apps as Lorex had instructed even before Lorex had ended its support.  However, Lorex failed to notify all of its customers that they would cease supporting the previously provided and accessible Lorex mobile Apps and firmware.  For those consumers who were caught unaware, their security cameras suddenly no longer worked.

9.      With the upgrade Lorex also suddenly discontinued support for certain of its camera models.  Those cameras did not work with the new Lorex mobile App platform or firmware update and consumers had no choice but to try and replace those cameras.

10.      Essentially, the upgrade rendered Lorex customers' cameras and security equipment completely worthless, despite the anticipated prolonged value the security equipment was initially intended to bring.

11.      Lorex acknowledged the failure of the mobile App migration and firmware update with a tweet sent on the day Lorex stopped supporting the old platform.  Lorex's August 15, 2019 tweet read as follows:

> We understand that some customers may be experiencing difficulties with remote viewing on Lorex devices . . . [t]his is due to a necessary product update, which will include transition to a new App or camera platform for certain models for better reliability and performance.[8]

12.      Despite the fact that the upgrade was pre-planned and that Lorex knew this upgrade would cause its consumers to lose the use of their cameras and, in fact, did cause

---

[8]      https://twitter.com/LOREXTECHNOLOGY/status/1162090960106479616 (last visited December 10, 2019).

CLASS ACTION COMPLAINT

4

a malfunction in thousands of cameras, Lorex failed to assist the consumers who lost use of their security cameras.  Plaintiffs and other member of the class spent days on the phone to Lorex customer service with no result.  Consumers looking to regain access to their security cameras called dozens of times with no resolution to their problems.  Despite causing the very issues consumers needed help resolving, Lorex did not provide assistance to their customers.

13.    Lorex was unwilling or unable to send any of its technicians to consumers' homes, and instead, provided only limited assistance over the telephone service.

14.    When Plaintiffs called Lorex, they encountered technical service representatives who were untrained and ill-equipped to help.  Lorex customers called Lorex countless times over several months, waiting on hold for hours and participating in calls that lasted just as long.  Plaintiffs describe participating calls that lasted most of the day finishing the call with no resolution to their issues.  These same customers would call back the next day or week and, when they reached a new Lorex representative, Lorex would say they had no record of the previous call and no new answers to their problems.

15.    Plaintiffs even described taking time off from work in their desperation to restore access to the security feed that they needed to safeguard their families and homes.

16.    Lorex representatives also told multiple Plaintiffs that their security systems need to be replaced and that replacement cameras or DVRs were on their way.  However, after waiting weeks for the new systems to be delivered, those Plaintiffs would call back only to be told there was no record of a replacement being ordered.  Worse, these same Plaintiffs were now told that they were not entitled to a replacement camera.

17.    Essentially, after having gone months without access to their security system and having spent hours on the phone with Lorex representatives, customers found themselves back at square one without any indication they their security systems would be restored.

18.    Notably, this interruption of service and loss of remote access is the subject of hundreds of online complaints.[9]  Lorex sold its security camera systems with the express and implied representation that its consumers would enjoy uninterrupted service and would be able to monitor the security feed through remote access.

19.    According to an email Lorex sent to consumers, the firmware upgrade and mobile App migration caused Lorex to have to replace approximately "50,000 units nationwide."

20.    Plaintiffs and proposed class members gave Lorex ample opportunity to repair their security systems.  Every time a customer called and spoke with a Lorex authorized technical service representative was an opportunity for Lorex to repair the defects they had created by their own actions.  But Lorex failed to repair the defects or non-conformities despite being presented with innumerable—and certainly more than a reasonable number—attempts to repair.

21.    As a result of Lorex's actions, Plaintiffs and the proposed Class have suffered damages.  They purchased Lorex security cameras, recorders, and systems that they would not have otherwise purchased or which were not worth the price they paid had they known that those security cameras, recorders, and systems would suddenly be rendered useless and that they would be without access to their security feeds for weeks, months, and, in some instances, permanently.

---

[9]    *See*, Lorex Reviews and Complaints, Better Business Bureaus https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited December 13, 2019); Pissed Consumer https://lorex.pissedconsumer.com/review.html (December 13, 2019); Yelp https://www.yelp.com/biz/lorex-technology-markham (December 13, 2019).

**JURISDICTION AND VENUE**

22.     Jurisdiction is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because Plaintiffs Richard Mapstead and Sevim Badak (residents of the State of California); Robert McGinn (resident of the State of Illinois); David Chromy (resident of the State of Arizona); and Ronald Pottinger (resident of the State of Kentucky), seek relief on behalf of a nationwide class and state classes, which will result in at least one class member belonging to a different state than that of Defendants have their principal place of business in California and are incorporated in Delaware.

23.     When aggregated among a proposed class in the thousands, the amount in controversy exceeds the $5,000,000 exclusive of interest and costs, threshold for federal court jurisdiction.

24.     Therefore, both diversity jurisdiction and the damages requirement under CAFA are present, and this Court has jurisdiction.

25.     This Court has personal jurisdiction over Defendant Lorex Corporation which has its principal place of business in California and is authorized to do business in California, transacts business in California, and maintains sufficient minimum contacts in California.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to this claim occurred in this District, Defendant Lorex Corporation regularly conducts business in this District has its principal place of business in this District.  As such, Lorex Corporation resides in the Central District of California.

**PARTIES**

27.     Plaintiff Richard Mapstead is an individual who, at all relevant times, resided in Apple Valley, California.

28.     Plaintiff Sevim Badak is an individual who, at all relevant times, resided in Porter Ranch, California.

29.    Plaintiff Robert McGinn is an individual who, at all relevant times, resided in Villa Park, Illinois.

30.    Plaintiff David Chromy is an individual who, at all relevant times, resided in Chandler, Arizona.

31.    Plaintiff Ronald Pottinger is an individual who, at all relevant times, resided in Louisville, Kentucky.

32.    Defendant Lorex Corporation is a corporation organized under the laws of the State of Delaware, with its principal place of business at 23 Hubble Drive, Irvine, California 92618.

33.    Lorex sells security cameras, recorders, and systems throughout the United States either directly or by selling through intermediaries.  Lorex targets a nationwide market by selling both online and at nationwide retailers including Home Depot, Costco, Sam's Club, Best Buy and Amazon.com.

## FACTUAL ALLEGATIONS

### I.    Lorex's Deceptive and Misleading Marketing of it Cameras

34.    Lorex is a prominent video surveillance company that sells its video security systems through retail and online channels throughout the United States.  As part of its widespread campaign to market and sell its security systems, Lorex touts the quality of its products.

35.    Lorex boasts that "[o]ur cameras are easy-to-install and **offer unrivalled video performance**. As a **world leader in DIY high definition and wireless home security camera systems**, Lorex can help you secure what matters most and give you the peace of mind you deserve."[10]

36.    Lorex recognizes how important a working video security system is to its consumers and uses its consumers' concerns about security to sell its products.  Lorex

---

[10]    https://www.youtube.com/channel/UCBRQneNUSdU_bnRXuARdMFA (last visited November 26, 2019).

warns that "[a]n outdoor security camera serves as your first line of defence (sic) against home intrusions."[11]  But Lorex also assures its consumers that "[i]n the end, Lorex wired, wireless, and wire-free surveillance cameras **provide you peace of mind in knowing that your home or business is protected around-the-clock**."[12]

37.     Lorex, knowing its customers need a security system that give them uninterrupted service represents that "Lorex DVRs are **designed for 24/7 operation** with **exceptional performance** using professional-grade security features that **any tech novice could use**."[13]  Defendants represent to their consumers that "[a]t Lorex, we believe that security is more than just a feeling - it's a state of mind."[14]

38.     Lorex also knows that the consumer's need to remotely access their security system is essential and something customers rely on when purchasing Lorex products.  As Lorex acknowledges, "**[s]taying connected to the things you care about, regardless of your location, is a fundamental factor when it comes to that state of mind**."[15]

39.     Lorex affirms to consumers that its "professional grade systems **include remote viewing capabilities, perfect for staying connected and viewing multiple sites, from a single app**."[16]

40.     The internet is rife with complaints about Lorex's security cameras and defective software updates, with consumers airing their grievances on the Better Business Bureau website,[17] and a number of consumer complaint message boards,[18] as highlighted below:

---

[11]     https://www.lorextechnology.com/solutions/indoor-home-security-camera-solutions (last visited on November 25, 2019).

[12]     https://www.lorextechnology.com/security-cameras/N-14kthid (last visited November 25, 2019).

[13]     https://www.lorextechnology.com/product/info/security-dvr/R-sc2000035 (last visited November 27, 2019).

[14]     https://www.lorextechnology.com/corporate/About-Lorex-Technology/R-sc1900033 (last visited November 27, 2019).

[15]     https://www.lorextechnology.com/corporate/About-Lorex-Technology/R-sc1900033 (last visited November 27, 2019).

[16]     https://www.lorextechnology.com/corporate/About-Lorex-Technology/R-sc1900033 (last visited November 27, 2019).

[17]     *See,e.g.*,https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited November 12, 2019)

[18]     *See* https://appgrooves.com/app/lorex-cloud-by-lorex-technology-inc/negative (last visited November 12,

- In August the company changed the software and promised that they would send free camera replacements that will support the new software . . . No sign of the camera a month later and when I chased they promised new dates for the cameras to be delivered and those dates have come and gone . . . **I will be doing as almost 3 months without security is beyond a joke**. (emphasis added).[19]

- I have a similar issue with my Lorex system after the firmware update that I couldn't access my system. I have spent many hours with technical support my case number is XXXXXXXX. I was at a point two weeks ago that they promised a replacement unit of which I didn't get . . . **I have two Flir unites and one Lorex system in three out of town locations and I was able to access all three through Flir Cloud now with the upgade I can't do that**. (emphasis added).[20]

- My Lorex DVR quit working after you guys sent it a firmware update in August of this year. I called Support on August 23rd and was told that my unit (Model # LHB906-D, ID ***********) does not support the new firmware and an new unit will be shipped in 6-10 days . . . **It has been over 11 weeks since I first called about the firmware failure. I await your response**. (emphasis added).[21]

- I've been without remote access to my cameras since they migrated to a new app . . . I have 16 saved emails from Lorex disputing my request for assistance and a new DVR. **It's been two months since the original request for a new DVR, when I was advised a new one would be sent.** Now that I have contacted BBB Lorex is so concerned. (emphasis added).[22]

- This company forced changed the app and now it's completely useless. You call for help and get someone reading a script. **Over 2 months of no help. They advertise a service they do not provide. False advertising**!! (emphasis added).[23]

---

2019); https://www.sitejabber.com/reviews/lorextechnology.com (last visited November 12, 2019)

[19] https://lorex.pissedconsumer.com/stay-away-from-lorex-ok-camera-and-horrendous-customer-service-201910071674163.html (last visited November 27, 2019).

[20] https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited November 27, 2019).

[21] https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited November 27, 2019).

[22] https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited November 27, 2019).

[23] https://lorex.pissedconsumer.com/review.html (last visited November 27, 2019).

- I purchased a Lorex NVR system model LNK7108, which was operating fine until a forced software change was required to continue the use the system. After transitioning from ****** to Client in August 2019, 3 out of the 4 cameras went out. After contacting the customer support representative and following the script after 1.5 hours. It was determined that a Tier 2 representative would review the case and contact me in two to three days. I never heard from Lorex again . . . **While the past 3 months the security system I installed to provide peace of mind for my family doesn't even work.**" (emphasis added).[24]

- "Prior to Aug 15, 2019, my security system worked using Lorex Secure. Lorex discontinued that app and migrated to Lorex Cirrus, which does not work. […] It's been a month without answers from Lorex. I'm an attorney and I am drafting a complaint against Lorex and if someone else has the same issue, I will file a class action suit in federal court instead of in circuit court in Georgia, where I purchased the system. […] Reason of review: Access/ activation issues. […]. Monetary Loss: $3000. […] Preferred solution: Full refund."[25]

- • "After purchasing and using a Lorex system for more than 3 years (LNR1180) Lorex decided to update the mobile app which is not compatible with my system. There is no update available so i cannot monitor my system remotely as promised when I purchased the system."[26]

- I spent more than $1,000 on the video system with four cameras that worked for less than nine months and quit when they changed the app. Spent at least eight hours on the phone with them. They agreed to send me a replacement. But what they sent me was a lousy $135 camera only that doesn't even fit the system I have. I am hoping there is a class action suit that I can join to sue these people.[27]

- "Aug 15th Lorex Secure advised me to upgrade to Cirrus. Now my Client 13 does not work on my PC. […] Related: Lorex - Not what was advertised. Also Cirrus not sending notifications for motion. Privacy

---

[24] *See* https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited January 28, 2020).

[25] *See* https://lorex.pissedconsumer.com/lorex-security-system-10594/reviews/RT-CP.html (last visited November 12, 2019)

[26] *See* https://lorex.pissedconsumer.com/lorex-intentionally-disables-video-security-system-201908221631707.html (last visited November 12, 2019)

[27] https://lorex.pissedconsumer.com/reviews/RT-P.html (last visited November 27, 2019).

mode not working since Cirrus playback captures motion when privacy enabled. Tried online support but chat just times out. Trued calling, on hold for eons. […] Sent email and no reply. […] Maybe I should box up my system and return to Costco. Not impressed. […] Product or Service Mentioned: Lorex Security System. […] Reason of review: Damaged or defective."[28]

- I have not had camera view since they changed app. They still do not have a fix. It has been over a month and they could care less. Terrible customer service.[29]

- **It's been over a month since I lost access to my system cameras. Lorex took forever to contact me.** When they finally did, their solution to my issue didn't do any good. I'm sorry I purchased this system. I wasted my money. Their customer service is horrendous. (emphasis added).[30]

- It is pretty much the same as everyone else. When they migrated from Lorex Secure, which worked fine, to Lorex Cirrus, It doesn't work.[31]

- "My unit was trashed by your update. Poorest support I have ever encountered."[32]

41.     The problem is not only that Lorex caused tens of thousands of its customers to lose access to their security system but also that Lorex failed utterly to respond to the consumers who turned to Lorex for help in regaining access.  Lorex's failures in remedying and responding to consumers is equally well documented in a seemingly unending stream of consumer complaints:

- Since the "switch" of August 15, **spent over 20 hours on the phone with customer service/tech support and still not working**. They promise to call you back, they do not. All they are interested in is clearing their ticket

---

[28]     *See* https://lorex.pissedconsumer.com/cirrus-has-problems-client-13-will-not-connect-201908191628785.html (last visited November 12, 2019).
[29]     *Id*.
[30]     *Id*.
[31]     https://lorex.pissedconsumer.com/reviews/RT-P.html (last visited November 27, 2019).
[32]     *See* https://lorex.pissedconsumer.com/lorex-security-system-10594/reviews/RT-CP.html (last visited November 12, 2019)

CLASS ACTION COMPLAINT

number from your call in. My $5000 system is now worthless. Any attorney want to consider class action lawsuit??? (emphasis added).[33]

- **Literally spent 8 hours in relentless attempt to resolve issues with a failed recording unit. Customer service lied and said sending unit, no show. Called back and started over and promised shipment of unit next day, 4 days later and no response, no unit. On hold as I am typing this to get status**. Completely unethical company, costly mistake for choosing this unit due to customer service. (emphasis added).[34]

- WORST CUSTOMER SERVICE ON THE PLANET!!! - Been a customer of Lorex for years, I had an issue and needed to called their help desk, **I waited 3 hours and 47 minutes on hold, no one ever picked up to help me**, then tried their chat support and that took over three hours to get any help, then they put me through to get a replacement under my warranty, Lorex is awful. (emphasis added).[35]

- I have sat **on hold over 3 hours for a customer service representative to pick up the phone. I have spoken to numerous customer service representative.** At one point it was close to 7 p.m. my time must have been close to them closing because the lady said no more questions I have to go and she hung up on me.  I was absolutely livid I phone back again 4 customer service on my lunch time **I sat there for my full lunch time on hold three days in a row** by the time I get home at 5 p.m. they are closed back east so I have to wait for Saturday the customer service is absolutely horrid I would never ever deal with Lorex ever again. (emphasis added).[36]

- Absolutely terrible customer service. Waiting for my return label to send their stuff back.[37]

- Bought a security system in December 2018 directly from the company. 8 months later the system stopped working. The company issued a new software update that made most systems unusable any longer. **Called Lorex over 20 times with nothing but ******** false info**. (emphasis added).[38]

---

[33]    https://bestcompany.com/home-security-cameras/company/lorex (last visited November 27, 2019).
[34]    https://lorex.pissedconsumer.com/review.html (last visited November 27, 2019).
[35]    https://lorex.pissedconsumer.com/review.html (last visited November 27, 2019).
[36]    https://lorex.pissedconsumer.com/review.html (last visited November 27, 2019).
[37]    https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited November 27, 2019).
[38]    https://www.bbb.org/ca/on/markham/profile/security-cameras/lorex-technology-inc-0107-1366311/customer-reviews (last visited November 27, 2019).

CLASS ACTION COMPLAINT

- Don't waste your money. **They don't care about customers whatsoever and when they have an issue that is their fault, they take it out on the customer and take months to find a solution. All they do is feed you lies over the phone, if they even pick up at all**. (emphasis added).[39]

### Lorex's Replacement Cameras and Mobile App Are Inadequate

42.     After the firmware update and Mobile App switch, Lorex admitted that certain of the Flir model cameras would no longer be supported and that consumers "may be eligible for a free Lorex Active Deterrence Wi-Fi replacement camera or a Lorex.com store discount of US$120.00 (or $160 CAD) per FX/FXC camera."[40]

43.     But for those very few consumers who were provided replacement cameras— after losing access to their security systems for weeks and months—the new cameras did not adequately replace the cameras the consumers had originally purchased.  In addition, the store discount does not cover the cost to replace the camera the consumer originally purchased.  Rather, by offering to issue an in-store discount (not credit) or an inadequate replacement camera, Defendants are manipulating consumers to spend more money with Lorex to replace a product that Lorex itself rendered inoperative.

44.     In addition, though Lorex represented it was "publishing a critical product update that is part of our ongoing commitment to provide our customers with the best and most reliable experience possible," Lorex consumers have found the new Lorex mobile App, that provides remote access viewing, to be a worse than the access they were offered when they made their original purchases.

45.     One Lorex consumer explained his/her experience with Lorex's new App as follows:

> They are trying to say this was an "upgraded" version of the app, **truth is they changed to a cheaper generic mobile app that is used by almost every free P2P (peer to peer) camera system**

---

[39]  *Id.*
[40]  https://www.lorextechnology.com/up#container_standalone_wifi (last visited December 13, 2019).

**on the planet**.....key term there being FREE.  **It's awful.**  The mobile app is **very complicated, doesn't work half the time, layout is not user friendly**.. it's just a crappy mobile app. (emphasis added.)[41]

46.  Another consumer detailed the problems with the new Mobile App:

All Lorex camera owners were recently **forced to abandon the old app and move to a "new" Lorex Cloud app that is absolutely terrible** for the following reasons:

1.  So **slow and difficult to use that it renders your Lorex camera system(s) completely useless**.  2.  You will rarely ever be able to even see any of the Live or Recorded video before the **app times out or crashes**. 3.  In the rare case that you do actually see any video, it **is extremely slow/laggy** (even on a 200Mbps symmetric fiber-optic connection).  4.  All video traffic is now being **routed to Lorex's Cloud servers, which is a major privacy problem!** There is absolutely nothing stopping them from selling your video to whomever is the highest bidder. They are probably already doing this. 5.  The aspect ratio of all video feeds are now **very stretched, which renders any of the extremely slow video totally warped and very difficult to view**. 6.  The max **video resolution has been significantly reduced** which turns your "4K" cameras into 1980's low resolution crap. (emphasis added.) [42]

47.  To any extent Lorex has attempted to mitigate the damage done to its consumers, these effort were inadequate.  In reality, Lorex forced consumers to "upgrade" from a mobile app that the consumers relied on to an inferior Mobile App in order for Lorex to save money.  Not only that, but with this upgrade Lorex purposely rendered many of its cameras obsolete in an effort to get customers to spend even more money with Lorex to replace those cameras.

---

[41]     https://www.yelp.com/biz/lorex-technology-markham (last visited December 13, 2019).
[42]     *Id.*

- **Breach of Express Warranty**

48.    Lorex warrants, to the original purchaser (the "Purchaser"), that its "Lorex branded product (the "Product"), if properly installed and used thereafter in strict accordance with the use and care guidelines provided in the instructions manual, shall be free from manufacturing defects in material and workmanship."[43]

49.    "All Lorex security cameras, recorders, and systems include a 2-year warranty. This warranty covers the Product for a total of 2 years from the date of purchase. If the Product is found to be defective within these two years, it may either be repaired or returned."[44]

50.    "The Lorex limited warranty includes expert technical support."[45]

51.    Lorex, which admitted it had "thoroughly tested the update process," knew or should have known that its firmware and mobile App update would render useless the security cameras, recorders, and systems of tens of thousands of its customers.

52.    Each Plaintiff herein purchased Lorex in reliance on its numerous representations online and on the product box stating that Lorex' cameras will work remotely.

## Facts Specific to Plaintiffs

### Plaintiff Richard Mapstead

53.    Plaintiff Richard Mapstead ("Mr. Mapstead") purchased his Lorex security system in April 2018.  Mr. Mapstead's security system was comprised of a number of cameras and a recording DVR.  Mr. Mapstead purchased his Lorex security system to provide security for his home where he lives with his family, including his wife, his brother, and his sister.

54.    Mr. Mapstead purchased his Lorex security system after viewing representation from Lorex that he would be able to remotely access the video feed of his

---

43    https://www.lorextechnology.com/policies/lorex-product-warranty/R-sc2700034 (last visited November 27, 2019).
44    https://www.lorextechnology.com/policies/lorex-product-warranty/R-sc2700034 (last visited November 27, 2019).
45    https://www.lorextechnology.com/policies/lorex-product-warranty/R-sc2700034 (last visited November 27, 2019).

security cameras through his phone using the Lorex App. Mr. Mapstead relied on those representations and, prior to August 2019, used his cellular telephone to remotely access the video feed of his Lorex security system through the Lorex mobile App when he was away from home.

55.    On or about August 15, 2019, Mr. Mapstead lost the ability to remotely access his Lorex security system.

56.    Mr. Mapstead performed the firmware update and downloaded the new mobile App as Lorex instructed. Despite specifically following Lorex's instructions on how to perform the firmware and mobile App upgrade, Mr. Mapstead was not able to remotely access his Lorex security system.

57.    In an effort to restore access to the video feed of his security system, Mr. Mapstead called Lorex's technical support.

58.    Mr. Mapstead made his first call to Lorex on August 27, 2019. He made a total of three calls to Lorex that day. Mr. Mapstead experienced a wait time of more than an hour and, in total, spent several hours on the phone with Lorex during this first call. In an effort to repair the security system, an authorized Lorex technical representative had Mr. Mapstead perform a number of steps, including: again downloading the new Lorex App (multiple times); changing his user name; changing his password. Despite the time and effort spent by Mr. Mapstead, he was not able to regain access to the video feed of his security system. At the close of the call, the Lorex technical service representative told Mr. Mapstead to call back in a few days.

59.    Mr. Mapstead next called Lorex on August 30, 2019 (three times) and again on August 31, 2019. Mr. Mapstead spoke to an authorized technical representative of Lorex in an effort to repair his security system and restore remote access to his security feed. The Lorex technical service representative again had Mr. Mapstead download the new Lorex App and change his username and password.

60.    In addition, on August 31, 2019, the Lorex technical representative had Mr. Mapstead create a Dynamic Domain Name System ("DDNS") account in an attempt to solve the problem of a changing residential IP address by associating his Lorex system with a consistent domain name.  Despite going through this time consuming and labor intensive process at the direction of Lorex, Mr. Mapstead still did not have remote access to this security system feed.  He was told again to call back in a few days.

61.    On September 2, 2019, before Mr. Mapstead was able to call Lorex for an eighth time, Lorex sent Mr. Mapstead an email with a case number and a summary of Mr. Mapstead's issue: "remote access from the App not working."  In this email, Lorex said that Mr. Mapstead was to "complete some work on your end and then get back to us within five days" and that his case was on hold while Lorex waited for his response.  Lorex informed Mr. Mapstead that if they did not hear back from him "**in the next two days**" that his case **"will be automatically closed by the system**."

62.    On September 5, 2019, Mr. Mapstead received an email from Lorex telling him that, because they had not heard back from him in the 5 days since his last call, Lorex was "proceeding to close the case for administrative reasons."

63.    That same day Mr. Mapstead called Lorex technical service again.  On this occasion, a technical service representative took control of Mr. Mapstead's computer in an attempt to repair the issue.  In addition, Mr. Mapstead opened his internet ports and entered his newly acquired DDNS.  None of these steps restored remote access to Mr. Mapstead's security feed.

64.    Mr. Mapstead called Lorex again on September 18, 2019, twice on September 19, 2019, and twice on September 20, 2019.  During one of these calls, a Lorex technical service representative concluded that Mr. Mapstead needed a replacement DVR for his Lorex security system.  Lorex sent an email on September 19, 2019 confirming that a replacement unit would be sent to Mr. Mapstead's home address.

65.     However, on September 24, 2019, Mr. Mapstead received an email from Lorex informing him that his "case has been closed."  Lorex wrote that "[t]his normally occurs after we receive confirmation that your issue has been resolved, or if there was no activity for 5 days."  Neither of those were true but Lorex closed Mr. Mapstead's case nevertheless.

66.     In response, Mr. Mapstead called Lorex - now for the 16th time in less than a month.  When Mr. Mapstead reached a Lorex representative, the technical representative said that there was no record of a replacement DVR being shipped.  Mr. Mapstead was told that his case had been closed, could not be re-opened, that there were no notes on his account, and that he would have to tell this representative the issues he was having with his Lorex security system *from the beginning*.

67.     Mr. Mapstead called Lorex twice on September 24, 2019 and twice more on September 25, 2019.  During those calls he performed all of the same steps that he had performed on each of the many previous calls with other Lorex representatives.

68.     In total, Mr. Mapstead called Lorex's technical support 17 times in one month's time and, in total, spent more than twenty hours on the phone.  However, despite his best efforts and despite following Lorex's instructions regarding, among other things, downloading the firmware and mobile App update, opening the ports to his internet router and allowing Lorex technical support to remotely access his computer, Mr. Mapstead was unable to restore access to his Lorex security system.

69.     On October 7, 2019, Lorex sent Mr. Mapstead an email informing him that "the case reported by you under the above mentioned case number has now been closed."

70.     Then on October 21, 2019, more than two months after Mr. Mapstead lost access to his security system, Lorex sent an email informing him that they had shipped a replacement DVR to his home.

71.     When he received this DVR from Lorex, Mr. Mapstead installed the new DVR but was still unable to remotely access his security feed from his phone.  Further, when Mr.

Mapstead attempts to connect to his security feed, either through the App or from his home computer, the program often crashes or fails to load at all.  When Mr. Mapstead is able to connect to his security feed from his home computer, the quality of the video feed is demonstrably worse than it was prior to August 15, 2019.

72.    As of this filing, Mr. Mapstead is still unable to remotely access the security feed from his Lorex camera system through the new Lorex App on his cellular phone.

**Plaintiff Sevim Badak**

73.    Plaintiff Sevim Badak ("Ms. Badak") purchased her Lorex security system in April 2019.  Ms. Badak's security system was comprised of a number of cameras and a recording DVR.  Ms. Badak purchased her Lorex security system to provide security for her home where she lives with her family.

74.    Ms. Badak purchased her Lorex security system after viewing representations from Lorex that she would be able to remotely access the video feed of her security cameras through her phone using the Lorex App.  Ms. Badak relied on those representations and, prior to August 2019, used her cellular telephone and her laptop computer to remotely access the video feed of her Lorex security system through the Lorex mobile App when she was away from home.

75.    On or about July 30, 2019, Ms. Badak lost the ability to remotely access the feed from her Lorex security system.

76.    Ms. Badak downloaded the firmware update and downloaded the new mobile App as Lorex instructed.  Despite specifically following Lorex's instructions on how to perform the firmware and mobile App upgrade, Ms. Badak was not able to remotely access her Lorex security system.

77.    In an effort to restore access to the video feed of her security system, Ms. Badak called Lorex's technical support.

78.    Ms. Badak made her first call to Lorex on July 30, 2019.  Ms. Badak spent more than an hour on the phone that day.  Ms. Badak spoke to an authorized Lorex technical

representative who told her that a fix to the security system was coming soon and offered Ms. Badak no further help.  Despite spending an hour on the phone with a Lorex representative, Ms. Badak was no longer able to view her Lorex security feed remotely on her laptop or her cellular phone.

79.    Ms. Badak called Lorex several times over the next week: twice on August 4, 2019, on August 6, 2019, and on August 17, 2019.

80.    On August 17, 2019, Ms. Badak called Lorex four times and spent more than two hours on the phone with Lorex technical support representatives.  The Lorex representative again had Ms. Badak download the firmware update and reload the new Lorex mobile App.

81.    Ms. Badak called Lorex technical service throughout August and September 2019.  Every time she called, Ms. Badak spoke to a new Lorex representative and had to repeat the story of the issues she was having each time.  And each time she was given the same useless instructions to download the firmware update and reload the mobile App. None of Lorex's attempts to repair were successful.

82.    Ms. Badak called Lorex, in an attempt to have Lorex repair her dysfunctional security system, on the following dates for the following times:

- August 21, 2019 for 58 minutes
- August 21, 2019 for 66 minutes
- August 22, 2019 for 53 minutes
- August 23, 2019 for 89 minutes
- August 29, 2019 for 22 minutes
- August 29, 2019 for 49 minutes
- September 27, 2019 for 30 minutes
- September 27, 2019 for 79 minutes

83.    In total, Ms. Badak called Lorex's technical support 23 times in one month and, in total, spent more than ten hours on the phone.  However, despite her best efforts and despite following Lorex's instructions, Ms. Badak was unable to adequately restore mobile access to her Lorex security system.

**Plaintiff Robert McGinn**

84.    Plaintiff Robert McGinn ("Mr. McGinn") purchased his Lorex security system in June 2018.  Mr. McGinn purchased his Lorex security system to provide security for his home after experiencing vandalism on his property.  Mr. McGinn travels for business and purchased his security system to monitor his home and his family while he is away.

85.    Mr. McGinn purchased his wireless six-camera Lorex security system after viewing representations from Lorex that he would be able to remotely access the video feed of his security cameras through his android cellular telephone using the Lorex App. Mr. McGinn relied on those representations and, prior to August 2019, used his cellular telephone and his laptop computer to remotely access the video feed of his Lorex security system through the Lorex mobile App when he was away from home.

86.    Around August 1, 2019 Mr. McGinn received notification on the Lorex App for android that the Lorex App he was using would no longer be supported and that he needed to download the new Lorex cirrus App. Instructions said the new Lorex App would automatically populate with personal and registration information from my old App.

87.    Mr. McGinn first downloaded the new Lorex cirrus App on August 3, 2019. The new App installed but would not perform the auto populate function or stream the video feed from his Lorex security system. Instead, Mr. McGinn re-installed the older Lorex App which, at that time prior to August 15, 2019, still functioned properly with the security system.

88.    On Friday August 16, 2019, Mr. McGinn conducted an inspection of the wireless camera battery levels for his Lorex cameras. It was then that Mr. McGinn

discovered that his Lorex DVR was in the process of an online update. The connected display advised that the system was in an update and would be available in a few minutes and to not disconnect, power down or disturb the system.  Mr. McGinn waited and monitored the update to what he thought was the completion of the update. After approximately 15 minutes the system rebooted and then displayed the message that it was "CHECKING FOR UPDATES" followed by a return to the system update display stating that the system was updating and be available in a few minutes, do not disturb.  Mr. McGinn watched this update loop occur 3 more times before leaving the system alone in the hopes that the system would eventually complete the update successfully.

89.    On Saturday August 17, Mr. McGinn checked the Lorex security system display and the system was in the same state: "UPDATING".  On the morning of Sunday August 18, 2019 Mr. McGinn again observed that the systems status was unchanged. However, 8 hours later, he found that the status had now changed and his Lorex system was locked on the welcome screen display. Up to this point Mr. McGinn had not touched the system. He powered the system off, waited 1 minute, powered up and observed the same result: locked at the welcome screen.

90.    On Monday August 19, 2019, Mr. McGinn emailed Lorex technical support through the support page on Lorex's website. Mr. McGinn was assigned a case number 00763011 and received a follow up email to make record of the contact. The email also instructed Mr. McGinn to power down his Lorex security system for 1 hour and to disconnect the ethernet. Mr. McGinn followed the instructions but, upon powering-up the system, he saw that the system was again locked on the welcome screen display. Mr. McGinn replied to the Lorex email with the results and requested continued support.

91.    On the morning of August 20, 2019, Mr. McGinn placed a call to Lorex technical support phone number. After a lengthy hold, Mr. McGinn reached a Lorex representative who took his contact info and said they would call back in 30 minutes. A Lorex representative did call and left a voicemail at 2:37pm and Mr. McGinn called back

at 2:38pm. When he was finally connected with technical support, Mr. McGinn was again promised a call back within 30 minutes. More than an hour later Mr. McGinn did receive a return phone call and a Lorex technical support representative directed him to once again power down and power up his security system; which he did. The exercise yielded the same results and his security system remained locked at the welcome screen.

92.    Mr. McGinn again called Lorex technical support at 7:02pm, and again received a return call, but when he spoke with the Lorex representative he had to repeat answers to questions about his contact and system information and the issues he was having with his security system. Mr. McGinn asked why this repetition was necessary and the Lorex representative admitted that technical support did not receive call-in ticket information or even case numbers. The representative had no idea who Mr. McGinn was or why he was calling.

93.    During this call the Lorex technical support representative asked Mr. McGinn for the specific DVR model and serial numbers of his security system. After providing that information, the Lorex representative had Mr. McGinn perform the same power down-power up exercise which yielded no improvement. The Lorex representative informed Mr. McGinn that his case was being elevated to advanced technical support and assured him that he would receive a call back within 24 hours from advanced tech support.

94.    The next day, August 21, 2019, Mr. McGinn received an email from Lorex informing him that Lorex was "unable to complete the resolution process on the call as **you are to complete some work on your end and then get back to us**," despite Mr. McGinn having performed all the tasks that multiple Lorex representatives requested he perform. Lorex went on to state that they were putting the case on hold and that "**[i]f we do not hear back from you in the next five days, this case will be automatically closed by the system**." Mr. McGinn now had 3 different case numbers with tech support: 763011, 26427 and 26478.

95.     On August 22, 2019, Mr. McGinn sent an email to Lorex asking when Lorex's advance technical support would respond as it was now 36 hours since his last call with Lorex.

96.     On the morning of August 23, 2019, Mr. McGinn again placed a call to Lorex technical support and told the representative that he had not heard from Lorex's advance technical support, that he had performed the attempts at repair as Lorex instructed, and that he was now losing patience. Mr. McGinn requested that Lorex send a replacement DVR and after being put on hold 8 times in 21 minutes (so they could check with the supervisor) the Lorex representative told Mr. McGinn that would he would be receiving a replacement DVR within 10 business days. The representative informed Mr. McGinn that he would receive a confirmation email in four(4) business days.

97.     . Almost two weeks later, on September 4, 2019, having still not received an email confirming the shipment of a replacement DVR, Mr. McGinn instead received an email from Lorex with the following instructions:

**DVR unit not booting up after firmware upgrade.**

- Disconnect all cameras and the DVR from power.
- Try using the power adapter from your cameras on your DVR instead.
  - If the system boots up proceed to format the hard drive following these steps HERE (this WILL delete all local recordings). Then set factory defaults by following the steps HERE.
  - If the system is still not booting proceed with the following steps below.
- Remove the four (4) screws located in the back part the DVR. (see picture)
- Remove the two (2) screws located on each side of the DVR. (see picture)
- Slide the cover off.
- Disconnect the two cables from the hard drive. (see picture)
- Bypass any surge protector or power strip and reconnect the system power adapter/cord directly to the wall outlet.
  - If the system boots up proceed to format the hard drive following these steps HERE (this WILL delete all local recordings). Then set factory defaults by following the steps HERE.
  - If the system is still not booting, please contact our Technical Support line to continue with the next step.

98.    Not only were the instructions in the email, confusing, technical, and labor intensive, but they were for the wrong Lorex security system; the instructions were for a DV900 system and Mr. McGinn had a LHB906 system.

99.    Mr. McGinn wrote back with the following response which reads in part:

The last contact I had with technical support was on August 23rd, 2019. I was promised a follow-up email within 4 business days to preserve to discussion of that call by August 28th. To date I have had no further contact until this contact by you today. In the previous contact I was told I would be receiving a warranty replacement LHB 906 dvr to be delivered within 10 business days on September 5th, 2019. Now you have sent me trouble shooting instructions that appear to be for a dv900 dvr, not the model I have lhb 906. Additionally:

- You have directed me to disconnect all the cameras and power from the dvr; My cameras are wireless- no connection to the dvr.
- You directed me to try using my camera power adapters to power the dvr; My cameras are battery powered, they charge by a mini USB connector. The dvr power connector is not USB.
- The pictures provided for possible dis-assembly are not of my dvr; Will I damage my dvr by following incorrect instructions.

Once again I am very dis-appointed with the extremely poor level of technical expertise from your technical service department.

100.    On September 17, 2019, having received no response from Lorex to his email, Mr. McGinn contacted the Better Business Bureau ("BBB") to lodge a complaint against Lorex.  According to the BBB, they contacted Lorex that day and the Lorex "Head Office" replied back the next day, informing them that "a replacement DVR with updated Firmware is being shipped to this customer."

101.    On September 19, 2019, Mr. McGinn received an email from Lorex informing him that a replacement DVR was on its way.  But instead of supplying the tracking number for the replacement DVR they informed Mr. McGinn that he was to send his current DVR back to Lorex and provided a tracking number for the return.

102.    Mr. McGinn received a replacement DVR on September 24, 2019.  He reported the receipt to the BBB and told them that he "received a new dvr which I have installed and appears to function correctly" and asked that the BBB close the complaint.

103.    However, despite it appearing to function correctly, the replacement DVR did not adequately restore remote access to Mr. McGinn's Lorex security system feed.  Mr. McGinn is still not able to remotely access his security feed, when he tries to access remotely now he typically is met instead with a thumbnail that says if he presses it, will show the live feed.  In addition, he is unable to view more than one camera stream at once, whereas before August 15, 2019 he was able to view all six cameras in one display.

**Plaintiff David Chromy**

104.    Plaintiff David Chromy ("Mr. Chromy") purchased his Lorex security system in November 2018.  Mr. Chromy purchased his Lorex security system to provide security for his home where he lives with his family.

105.  Mr. Chromy purchased his Lorex security system after viewing representations from Lorex that he would be able to remotely access the video feed of his security cameras through his android phone using the Lorex App.  Mr. Chromy viewed representations made on Lorex's website and at the retail store Costco.  Mr. Chromy relied on those representations and, prior to August 2019, used his cellular telephone to remotely

access the video feed of his Lorex security system through the Lorex mobile App when he was away from home.

106.   In late July 2019, Mr. Chromy lost the ability to remotely access the feed from his Lorex security system.  Mr. Chromy's Lorex cameras didn't work and neither was able to remotely access his security video feed from his cellular telephone.

107.   In August 2019, Lorex informed Mr. Chromy that he would have to update his mobile App.  Mr. Chromy downloaded the firmware update and downloaded the new mobile App as Lorex instructed.  Despite specifically following Lorex's instructions on how to perform the firmware and mobile App upgrade, Mr. Chromy was not able to remotely access his Lorex security system.

108.   In an effort to restore access to the video feed of his security system, Mr. Badak contacted Lorex through the online chat function on Lorex's website.

109.   Mr. Chromy first contacted Lorex in August 2019 in an effort to have Lorex repair access to his security system.  Mr. Chromy chatted with an authorized Lorex technical representative who instructed him to download the firmware update again and reload the new Lorex mobile App.  Despite following the Lorex representative's instructions, these steps did not restore remote access to Mr. Chromy's security system.

110.   Mr. Chromy called and chatted with Lorex technical service throughout August and September 2019.  Every time he contacted Lorex, Mr. Chromy spoke to a new Lorex representative and had to repeat the story of the issues he was having.  And each time he was given the same instructions to download the firmware update and reload the mobile App.  None of Lorex's attempts to repair were successful.

111.   Mr. Chromy called Lorex, in an attempt to have Lorex repair his dysfunctional security system, on the following dates:

- September 10, 2019 (six times)

- September 11, 2019 (three times)

- September 12, 2019

- September 14, 2019

112.    During a chat with a Lorex technical representative on September 11, 2019, the representative promised to send Mr. Chromy a replacement system and told him that he should "wait for 5-6 days to be contacted" and that "the replacement will be in 2-3 weeks."

113.    On September 23, 2019, despite not yet receiving a replacement system, Lorex emailed Mr. Chromy the same form email it had sent other consumers, informing Mr. Chromy that his "case is currently on hold as we are waiting for your response" and telling him that "**[i]f we do not hear back from you in the next one day, this case will be automatically closed by the system**."

114.    Then on September 27, 2019, having still not received his replacement security system, Lorex wrote Mr. Chromy saying "[t]he purpose of this email is to let you know that we have not received the defective unit back from you yet."  Lorex sent nearly identical emails on October 17, 2019 and October 24, 2019.

115.    Lorex finally sent Mr. Chromy a new receiver sometime in October.  The replacement DVR was the exact same model Mr. Chromy had already experienced problems with but was, in fact, even older.  Mr. Chromy connected the receiver but he still wasn't able to remotely view his security feed.  The same day he received the replacement DVR, Mr. Chromy spent an hour calling Lorex technical service and attempted to update the DVR with the technical expertise of the Lorex representative.  However, Lorex was still unable to repair remote access to Mr. Chromy's security video feed.

116.    On December 3, 2019, Lorex sent an email to Mr. Chromy after not having any contact with him for more than a month.  Lorex's email was the same form email they has sent to Mr. Chromy previously.  It stated that his "case is currently on hold as we are

waiting for your response" and telling him that "**[i]f we do not hear back from you in the next one day, this case will be automatically closed by the system**."

117.   On December 16, 2019 Lorex called Mr. Chromy and said that he would attempt to trouble shoot the problems with Mr. Chromy's Lorex security system. Despite his attempts, the Lorex technical service representative was unable to restore remote access to Mr. Chromy's security feed.

118.   Later that same day replacement DVR from Lorex arrived at Mr. Chromy's home. The replacement DVR was the same model as the non-functioning DVR Mr. Chromy already possessed - only the replacement DVR was even older.  Mr. Chromy attempted to hooked up the DVR but the replacement DVR also failed to restore remote access to the Lorex security feed. Mr. Chromy called Lorex technical service and was on hold for 15 minutes before a recorded message told Mr. Chromy that a Lorex representative would call him.  Mr. Chromy never received a return call from Lorex.

119.   However, despite Mr. Chromy's best efforts and despite following Lorex's instructions, Lorex never repaired remote access to Mr. Chromy's security feed.

**Plaintiff Ronald Pottinger**

120.   Plaintiff Ronald Pottinger ("Mr. Pottinger") purchased his Lorex security system in March 2014.  Mr. Pottinger purchased his Lorex security system in order to monitor the safety and well-being of his wife, who had recently suffered a stroke, while he was at work.

121.   Mr. Pottinger purchased his Lorex security system after viewing representations from Lorex that he would be able to remotely access the video feed of his security cameras through his iPhone and his iPad using the Lorex App.  Mr. Pottinger relied on those representations and, prior to August 2019, used his iPhone and his iPad to remotely access the video feed of his Lorex security system through the Lorex mobile App.

122.   On or about August 15, 2019, Mr. Pottinger discovered that he was no longer able to remotely access the video feed from his security system.  Lorex failed to notify him of the need to upgrade the firmware and mobile App.

123.   Mr. Pottinger attempted, again and again, to reload the Lorex App and the firmware.

124.   On September 5, 2019, in an effort to restore remote access to his security cameras, Mr. Pottinger called Lorex technical support and was given a ticket number.  He performed the firmware update and downloaded the new mobile App as a Lorex representative instructed.  However, despite specifically following Lorex's instructions on how to perform the firmware and mobile App upgrade, Mr. Pottinger was not able to restore remote access to the video feed of his security system.

125.   Between September 6, 2019 to September 24, 2019, Mr. Pottinger called Lorex technical service multiple times.  During this time, Mr. Pottinger spent over 25 hours on the phone with various Lorex representatives.  Among the attempts Mr. Pottinger made to repair remote access to his security video feed were: allowing Lorex representatives to remote into Mr. Pottinger's computer; purchasing a new router after being told his old router was obsolete; and performing port forwarding.

126.   During a typical call with Lorex, Mr. Pottinger would call in the evening after work.  Mr. Pottinger would experience at least a half hour wait time.  When a Lorex representative would answer the phone, Mr. Pottinger would provide his information. Each time he called, Mr. Pottinger was asked if he performed the firmware upgrade and downloaded the new Lorex App.  On at least one occastion, Mr. Pottinger spent 3 or 4 hours on the phone, was put on hold for 20-30 minutes and, when no one came back on the line - he hung up.  At this time it was between 10 and 11 at night.

127.   A Lorex representative told Mr. Pottinger that he should call first thing in the morning when more advanced technical representatives would be available.  On September 24, 2019, Mr. Pottinger took the day off from work to try and finally resolve the issues he

was having remotely accessing his security system so that he could monitor his wife's safety and health while he was at work.

128.   When Mr. Pottinger called Lorex at 8 a.m., as instructed, and, after a 30 minute wait, was told that there were no advanced technical service representatives available.  Instead Mr. Pottinger spent three hours on the phone repeating the same failed attempts at repair as had been tried previously.  None of these was successful.

129.   Between September 30, 2019 and November 1, 2019, Mr. Pottinger received the same generic email notifications from Lorex (about once a week on Friday nights, or Saturday Mornings) informing him that his "case is currently on hold as we are waiting for your response" and telling him that "**[i]f we do not hear back from you in the next seven day, this case will be automatically closed by the system**."

130.   Mr. Pottinger responded to each of these emails immediately, writing that he had not yet received a call from Lorex, that his system was still not functioning, and requesting that a Lorex representative call him.

131.   Finally, on November 4, 2019, a Lorex technical service representative called Mr. Pottinger's cell phone number and informed him that he was an advanced technical service representative.  However, because the Lorex representative had not schedule the call, Mr. Pottinger was not at home and was not able to allow the technical representative to remote into his computer.  The technical representative told Mr. Pottinger that he could call back in a 36 to 72 hour time window only between the hours of 9am and 5 pm weekdays.  When Mr. Pottinger told the representative that he couldn't take three days off from work, the Lorex representative told him that there was nothing he could do.

132.   Between November 4, 2019 and November 6, 2019, Mr. Pottinger again received the same generic email notifications from Lorex he had received previously and again telling him that his "case is currently on hold as we are waiting for your response" and telling him that "**[i]f we do not hear back from you in the next seven day, this case will be automatically closed by the system**."

133.   Mr. Pottinger made at least a dozen calls and spent more than twenty hours on the phone with Lorex technical support.  He took entire days off of work to call Lorex technical support and try to restore access to his security cameras.  Mr. Pottinger was told by a Lorex representative that he needed to replace his security system but he never received a replacement.

134.   Lorex never restored remote access to Mr. Pottinger's Lorex security system. On November 16, 2019, having been unable to monitor the safety of his home and his wife for 3 months, Mr. Pottinger was forced to purchase a new security system at his own cost.

## CLASS ALLEGATIONS

135.   Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and classes of similarly situated individuals.

136.   Plaintiffs seek to represent the following "Nationwide Class":

**Nationwide Class**: All persons throughout the United States who purchased a Lorex security camera system and/or security camera and/or recorder, for personal or commercial use (not for resale) and who lost access to their video feed after Lorex's firmware and mobile App upgrade on or about July and August 2019.

137.   In the alternative, Plaintiffs seek to represent the following state sub-classes:

**California Sub-Class**: All residents of California who purchased a Lorex security camera system and/or security camera and/or recorder, for personal or commercial use (not for resale) and who lost access to their video feed after Lorex's firmware and mobile App upgrade on or about July and August 2019.

138.   The Nationwide Class and the state sub-class will be referred to collectively as the "Class."

139.   ***Numerosity:*** Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are tens of thousands of putative Class Members throughout the United States who are generally ascertainable by appropriate discovery.

140.   ***Commonality:*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Lorex's firmware upgrade caused customers to lose access to their security system;

    b.    Whether Lorex's forcing customers to switch their mobile App caused those customers to lose access to their security system;

    c.    Whether Defendants knew or reasonably should have known that the firmware upgrade and mobile App switch would cause customers to lose access to their security system prior to August 15, 2019;

    d.    Whether Defendants breached express warranties related to their products;

    e.    Whether Defendants breached implied warranties related to their products;

    f.    Whether Plaintiffs are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of those damages;

141.   *Typicality*: Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Lorex's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

142.   *Adequacy of Representation:* Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or  adverse to the other members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

143.   *Superiority:* Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

144.   The nature of this action and the nature of laws available to Plaintiffs and the Class  make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Lorex would necessarily gain an unconscionable advantage since they would be able to exploit and  overwhelm  the  limited  resources  of  each  individual  Class  member  with  superior

financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

145.   Plaintiffs reserve the right to modify or amend the definition of the proposed class and subclass before the Court determines whether certification is appropriate and as the parties engage in discovery.

146.   The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

147.   Individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Member resulting from Lorex's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with

consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

148.   Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

149.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

## COUNT I
### Breach of Express Warranty
### (the California Sub-Class)

150.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

151.   Lorex promised, affirmed, and expressly warranted that its products "shall be free from manufacturing defects in material and workmanship."   Lorex's warranty also includes "expert technical support."   In other words, Lorex expressly warranted that its security cameras, recorders, and systems would continue to work as intended and that its customers would receive expert technical support if those products stopped working.

152.   Lorex's warranty became part of the basis of the bargain for Plaintiffs and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of security cameras, recorders, and systems.

153.   Lorex breached its warranty when it rendered useless the security cameras, recorders, and systems of tens of thousands of its customers after the August 15, 2019 firmware upgrade and mobile App migration.   Lorex customers were no longer able to access the video fees of their cameras, recorders, and systems, including the loss of remote access.   Lorex also breached its warranty by failing to provide adequate technical support to the customers that lost use of their security cameras, recorders, and systems.

154.   Despite repeated demands by Plaintiffs and Class Members that Lorex repair or replace the defective security cameras, recorders, and systems, Lorex has failed to provide an adequate repair or replacement.

155.   Plaintiffs and the Class Members notified Lorex of the breaches within a reasonable time, and/or were not required to do so because affording Lorex a reasonable opportunity to cure its breach of written warranty would have been futile. Lorex also knew of the defect and yet has failed to comply with its warranty obligations.

156.   As a direct and proximate result of Lorex's breach of its express written warranty, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

157.   The time limits contained in Lorex's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Lorex. A gross disparity in bargaining power existed between Lorex and Plaintiffs and the Class Members.

158.   Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Lorex's conduct described herein.

## COUNT II
### Breach of Implied Warranty
### (On Behalf of the Class)

159.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

160.   Lorex provided Plaintiffs and the Class Members with an implied warranty that the security cameras, recorders, and systems, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. However, the security cameras, recorders, and systems are not fit for their ordinary purpose because they were rendered

useless after the August 15, 2019 firmware upgrade and mobile App migration.  Lorex customers were no longer able to access the video fees of their cameras, recorders, and systems, including the loss of remote access.

161.   Lorex impliedly warranted that the security cameras, recorders, and systems were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the security cameras, recorders, and systems manufactured, supplied, distributed, and/or sold by Lorex were reliable and would not be rendered useless or that consumers would lose access to their video feed when consumers used them in a reasonable and foreseeable manner.

162.   Contrary to the applicable implied warranties, the security cameras, recorders, and systems were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with access to their security feed.

163.   Lorex's actions, as complained of herein, breached the implied warranty that the security cameras, recorders, and systems were of merchantable quality and fit for such use.

164.   Plaintiffs and the Class Members were harmed thereby.

## COUNT III

### Breach of the California Song-Beverly Act – Implied Warranty of Merchantability
### (On Behalf of the Class)

165.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

166.   The security cameras, recorders, and systems at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a). Plaintiffs and members of the Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

167.   Lorex is a "manufacturer" of the security cameras, recorders, and systems at issue here within the meaning Cal. Civ. Code § 1791(j).

168.   Lorex contracted with retailers so that the retailers could sell the security cameras, recorders, and systems at issue here to consumers. Lorex intended that consumers would be the end users of the security cameras, recorders, and systems at issue here and that consumers would be the beneficiaries of its contracts with retailers to sell the security cameras, recorders, and systems at issue here to consumers.

169.   Lorex impliedly warranted to Plaintiffs and Class members that its security cameras, recorders, and systems were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the security cameras, recorders, and systems do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

170.   Lorex provided Plaintiffs and the Class Members with an implied warranty that the security cameras, recorders, and systems, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. However, the security cameras, recorders, and systems are not fit for their ordinary purpose because they were rendered useless after the August 15, 2019 firmware upgrade and mobile App migration.  Lorex customers were no longer able to access the video fees of their cameras, recorders, and systems, including the loss of remote access.

171.   Lorex impliedly warranted that the security cameras, recorders, and systems were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the security cameras, recorders, and systems manufactured, supplied, distributed, and/or sold by Lorex were reliable and would not be rendered useless or that consumers would lose access to their video feed when consumers used them in a reasonable and foreseeable manner.

172.   Contrary to the applicable implied warranties, the security cameras, recorders, and systems were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with access to their security feed.

173.   Notice of breach is not required because Plaintiffs and the other Class members did not purchase their security cameras, recorders, and systems directly from Lorex.

174.   Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their security cameras, recorders, and systems or the overpayment or diminution in value of their security cameras, recorders, and systems.

175.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## COUNT VI

### Breach of Express Warranty—Magnuson Moss Warranty Act
### (On Behalf of the Class)

176.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

177.   Lorex's security cameras, recorders, and systems are consumer products as defined in 15 U.S.C. § 2301(1).

178.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

179.   Lorex is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

180.   Lorex provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

181.   15 U.S.C. § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

182.   Lorex breached its express warranty made to Plaintiffs, as follows.

183.   Lorex promised, affirmed, and expressly warranted that its products "shall be free from manufacturing defects in material and workmanship."   Lorex's warranty also

includes "expert technical support."  In other words, Lorex expressly warranted that its security cameras, recorders, and systems would continue to work as intended and that its customers would receive expert technical support if those products stopped working.

184.   Lorex's warranty became part of the basis of the bargain for Plaintiffs and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of security cameras, recorders, and systems.

185.   Lorex breached its warranty when it rendered useless the security cameras, recorders, and systems of tens of thousands of its customers after the August 15, 2019 firmware upgrade and mobile App migration.  Lorex customers were no longer able to access the video fees of their cameras, recorders, and systems, including the loss of remote access.  Lorex also breached its warranty by failing to provide adequate technical support to the customers that lost use of their security cameras, recorders, and systems.

186.   Despite repeated demands by Plaintiffs and Class Members that Lorex repair or replace the defective security cameras, recorders, and systems, Lorex has failed to provide an adequate repair or replacement in violation of 15 U.S.C. § 2304.

187.   As a direct and proximate result of Lorex's breach of its express written warranty, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## COUNT VII
### Violation of the CLRA
### (On Behalf of the Class)

188.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

189.   Lorex is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

190.   Plaintiffs and Class members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased one or more of the security cameras, recorders, and systems at issue here.

191.   The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

192.   Lorex has engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as described above and below by, among other things, failing to disclose the defective nature of the security cameras, recorders, and systems at issue here, representing that the security cameras, recorders, and systems had characteristics and benefits that they do not have (i.e. that they were reliable and would not be rendered useless or that consumers would lose access to their video feed when consumers used them in a reasonable and foreseeable manner), and representing that the security cameras, recorders, and systems were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9).

193.   Lorex knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

194.   Plaintiffs and Class members are reasonable consumers who expected that their security cameras, recorders, and systems would work as represented.

195.   As a result of Lorex's conduct and unfair or deceptive acts or practices, Plaintiffs and Class members suffered actual damages in that the security cameras, recorders, and systems do not function as represented and are not worth the amount paid and Lorex has deprived Plaintiffs and Class members the benefit of the bargain.

196.   As a result, Plaintiffs request damages, restitution, injunctive relief, punitive damages, and all other applicable relief under the CLRA, to provide compensation to Plaintiffs and class members.

///
///

## COUNT VIII

### Violation of the UCL

### (On Behalf of the Class)

197.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

198.   "Unfair competition" is defined by Business Professions Code Section § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of theses "wrongs" operates independently from the others.

199.   Lorex's conduct related to the sale of its defective security cameras, recorders, and systems violated this statute.

200.   Lorex committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by their violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

201.   Lorex committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it sold security cameras, recorders, and that were not fit for their ordinary purpose because they were rendered useless after the August 15, 2019 firmware upgrade and mobile App migration.  Lorex customers were no longer able to access the video fees of their cameras, recorders, and systems, including the loss of remote access.

202.   As a direct and proximate result of Lorex's unfair and deceptive practices, Plaintiffs and Class members suffered and will continue to suffer actual damages.

203.   As a result of its unfair and deceptive conduct, Lorex has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for relief and judgment, as follows:

      A.    Determining that this action is a proper class action;

      B.    Designating Plaintiffs as class representatives under Federal Rule of Civil Procedure 23;

      C.    Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

      D.    Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

      E.    Award punitive damages, to the extent permitted by law, in an amount to be determined at trial;

      F.    Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses under Federal Rule of Civil Procedure 23;

      G.    Awarding Plaintiffs and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law; and

      **H.**    Awarding such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of any and all triable issues.

///

///

///

Dated:  April 30, 2020

**KAZEROUNI LAW GROUP, APC**


By:  *s/ Abbas Kazerounian*
    Abbas Kazerounian, Esq.
    ak@kazlg.com
    *Counsel for Plaintiff and the Putative*
    *Class*